**CIRCLE IMPORT–EXPORT CO.**

**v.**

**UNITED STATES.**

**C.D. 4149; Protest Nos. 65/21394–80396, 65/21468–81954, and 65/21512–82820.**

United States Customs Court,
Third Division.

Dec. 18, 1970.

Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak, Los Angeles, Cal., of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Brian S. Goldstein and Andrew P. Vance, New York City, trial attorneys), for defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges.

LANDIS, Judge:

The merchandise in these three protests, consolidated for trial, consists of switch plates of the kind used to face up the opening of an electrical switch box and through which the on and off switch knob protrudes. The plates, made in Japan, are concededly decorative ceramic articles. (Exhibits 1, 2, 3, A, and B are representative samples of the imported switch plates.) Customs at Los Angeles, following what it perceived to be the legislative intent, classified the ceramic switch plates under the Tariff Schedules of the United States (TSUS) as household articles or ornamental articles, not specially provided for, of nonbone chinaware or porcelainware, dutiable at 45 per centum ad valorem under TSUS item 534.94.

Plaintiff's protests claim the ceramic switch plates should be dutiable at 30 per centum ad valorem under TSUS item 535.14 [1] or 17.5 per centum ad valorem under TSUS item 685.90.

Plaintiff has not mentioned the claim under TSUS item 535.14 in its brief and we deem it is abandoned. United Metal Goods Mfg. Company v. United States, 46 CCPA 120, 121, C.A.D. 712 (1959).

Primarily on authority of New York Merchandise Co., Inc. v. United States, 59 Cust.Ct. 306, C.D. 3150, 273 F.Supp. 377 (1967), the record of which has been incorporated into the record before us, and, secondarily, on certain statutory rules of interpretation prescribed in TSUS, and other judicial rules of interpretation, plaintiff here relies on the claim that ceramic switch plates are parts of electrical switches dutiable under TSUS item 685.90.

New York Merchandise involved classification of decorative brass switch plates under the Tariff Act of 1930. There the protest claimed that the decorative brass switch plates should be classified as household utensils under paragraph 339 or as articles or wares, not specially provided for, composed wholly or in chief value of brass, under paragraph 397. The Second Division of this court held the decorative brass switch plates in New York Merchandise properly dutiable as parts of electrical wiring devices, to wit, electrical switches, and sustained the customs classification under paragraph 353.

On its face, this case is materially different from New York Merchandise in two respects. The decorative switch plates in this case are ceramic switch plates, not brass switch plates. Also, TSUS is an entirely new and different statute from the Tariff Act of 1930. A former decision of this court is not controlling of a later case where the court is dealing with a different statute and different facts. "[W]e must * * * determine the intent of Congress evidenced by the statute now in force and apply it to the whole situation." United States v. J. H. Brown, Brown, Alcantar & Brown, Inc., 46 CCPA 1, 7, C.A.D. 686 (1958).

1. TSUS item 535.14 establishes a duty rate for "Ceramic magnets, ceramic electrical insulators whether or not in part of metal, and other ceramic electrical ware, including ferroelectric and piezoelectric ceramic elements".

The statute here in force, in the relevant context of TSUS items 534.94 and 685.90, provides as follows:

SCHEDULE 5.—NONMETALLIC MINERALS
AND PRODUCTS
Part 2.—Ceramic Products

\* \* \* \* \* \*

Subpart C.—Table, Kitchen, Household,
Art and Ornamental Pottery

Subpart C headnotes:

1. This subpart covers ceramic articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and certain smokers', household, and art and ornamental articles of ceramic ware. This subpart does not cover—
 (i) smokers' articles provided for in part 9B of schedule 7;
 (ii) other articles specifically provided for in schedule 7 or elsewhere in the schedules.

\* \* \* \* \* \* \*

Smokers' articles, household articles, and art and ornamental articles such as, but not limited to, statues, figurines, flowers, vases, lamp bases, bric-a-brac, and wall plaques, all the foregoing not specially provided for, of ceramic ware:

\* \* \* \* \* \* \*

534.94 Of nonbone chinaware or of sub-
 porcelain ...............45% ad val.

SCHEDULE 6.—METALS AND METAL PRODUCTS
Part 5.—Electrical Machinery and Equipment

\* \* \* \* \* \*

685.90 Electrical switches, relays,
 fuses, lightning arresters,
 plugs, receptacles, lamp
 sockets, terminals, terminal
 strips, junction boxes and
 other electrical apparatus
 for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof ...17.5% ad val.

The above headnotes and descriptive provisions are subject to TSUS General Interpretative Rules (and also such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings),[2] two of which plaintiff contends support its claim under TSUS item 685.90, as follows:

10. *General Interpretative Rules.* For the purposes of these schedules—

2. TSUS, General Headnotes and Rules of Interpretation 10.

3. In addition to the cited exhibits and the *New York Merchandise* incorporated rec-

\* \* \*· \* \* \*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(i) a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

(ii) comparisons are to be made only between provisions of coordinate or equal status, i. e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading;

\* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

■ Upon consideration of the record,[3] and for the reason that the presumptively correct customs classification of these ceramic switch plates under TSUS item 534.94, United States v. Bruce Duncan Co., Inc., etc., 50 CCPA 43, C.A.D. 817 (1963), accords with the intent of Congress, United States v. Andrew Fisher Cycle Co., Inc., 426 F.2d 1308, 57 CCPA, C.A.D. 986 (1970), we overrule the protests.

■ There is little need to detail the testimony of record. The testimony of plaintiff's witness is somewhat weaker, but not substantially different from the testimony summarized by the court in its opinion in the incorporated *New York Merchandise* case. The imported ceramic switch plates are exclusively used to face an open electrical switch box. Assuming these ceramic switch plates

ord, the record consists of exhibits 4 and 5 taken from the incorporated record and testimony of witness for the plaintiff and witness for the defendant.

are parts of electrical switches under General Interpretative Rule 10(ij), *supra*, and the holding in *New York Merchandise*, testimony that they are used in homes, offices, and warehouses is not sufficient to overcome the presumption that their use as household articles or ornamental articles, as classified by customs, exceeds all other uses combined.[4] Additionally, the fact that these ceramic switch plates are chiefly or exclusively used with electrical switches, a ·utility which marks all switch plates, is not inconsistent with the customs finding that they are ceramic switch plates of the kind chiefly selected, installed, and used in homes for ornamental purposes.

 Plaintiff alludes to the fact that TSUS schedule 5, part 2, subpart C (the part where these ceramic switch plates were classified) does not cover articles specifically provided for elsewhere in the schedules, and that the classifying TSUS item 534.94 only provides for household articles and ornamental articles, not specially provided for. A "not specially provided for" clause in a use provision excludes therefrom articles specifically enumerated elsewhere, provided the competing provision is more than an unlimited general description of merchandise and aptly and specifically names or describes the merchandise. United States v. Alltransport, Inc., 44 CCPA 149, C.A.D. 653 (1957); United States v. Lansen-Naeve Corp., 44 CCPA 31, C.A.D. 632 (1957); United States v. Garlock Packing Co., 32 CCPA 79, C.A.D. 289 (1944). The provision for parts in claimed TSUS item 685.90 is not an *eo nomine* provision as thrown out in plaintiff's brief. "While a 'parts' provision is not exactly a 'basket' provision, there is an analogy in that it necessarily includes a number of unnamed parts." United States v. Andrew Fisher Cycle Co., Inc., *supra*, 426 F.2d at page 1310. General Interpretative Rule 10(ij), *supra,* itself states that a provision for "parts" does not prevail over a specific provision for such part.

Stated differently, the rule can be read to say that a provision for "parts" will prevail only if the part is not specially provided for. Where the two competing tariff provisions provide for merchandise not specially provided for, as TSUS items 534.94 and 685.90 essentially do, the term should be disregarded in determining which of the two is more definite in its application to the merchandise in question. United States v. Perry, 25 CCPA 282, T.D. 49395 (1938); United States v. Lo Curto & Funk, 17 CCPA 19, T.D. 43319 (1929).

The rule of relative specificity in General Interpretative Rule 10(c), *supra*, relied on by plaintiff, is substantially ·a codification of the "rule of construction employed by the courts in trying to arrive at legislative intent. Like most rules of construction [including the rule of classification by use, Charles T. Wilson Co., Inc. v. United States, 38 CCPA 19, 23, C.A.D. 433 (1950)], it is frequently found in conflict with other rules of construction and at times must yield in controlling influence. * * * The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent." United States v. American Import Co., 26 CCPA 283, 287, C.A.D. 28 (1938); see also, National Carloading Corp. v. United States, 44 CCPA 77, C.A.D. 640 (1957), and Digest of the Customs Reports, 45 CCPA, Part 1, section 15, page 13. Plaintiff counters that the competing provisions for household articles and ornamental articles, not specially provided for (TSUS item 534.94) and parts of electrical switches (TSUS item 685.90) are not ambiguous and, therefore, resort may not be had to legislative history to determine what Congress intended, citing F. L. Smidth & Company v. United States, 56 CCPA 77, 84, C.A.D. 958 (1969).

But words are inexact tools at best and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter

---

4. TSUS, General Headnotes and Rules of Interpretation 10(e) (i).

how "clear the words may appear on 'superficial examination.'" [*Harrison v. Northern Trust Co.,* 317 U.S. 476, 479, 63 S.Ct. 361, 363, 87 L.Ed. 407 (1943).][5]

As the appeals court most recently stated:

* * * we, the judiciary, are [not] excluded from consideration of what the Tariff Commission thought when it was preparing the Tariff Schedules and what it clearly indicated about what it thought. The expressed intent of the drafters of the legislation is of great significance in determining the intent of the legislature that enacted it and to that extent it is not without "legal" effect. [*United States v. Andrew Fisher Cycle Co., Inc.,* 426 F.2d 1308, 57 CCPA, C.A.D. 986 (1970).]

Moreover, since the provision for parts in TSUS item 685.90, relied on by plaintiff, obviously classifies a number of unnamed parts, *United States v. Andrew Fisher Cycle Co., Inc., supra,* it is, in our opinion, ambiguous. We read the legislative history, next quoted, to strongly and sufficiently indicate that Congress intended ceramic switch plates to be classified in TSUS schedule 5, part 2, subpart C, as ornamental articles.

Item 535.14 does not embrace switches, fuses, receptacles, lamp sockets, resistors and other electrical articles which are to be connected into electrical circuitry. (These are specifically provided for in part 5 of schedule 6.) Item 535.14 does not include *ceramic wall plates for electric switches,* or electric lamp bases; *such articles are chiefly used for ornamental purposes, and are in subpart C of this part.* * * [Tariff Classification Study, Schedule 5, at page 95, emphasis added.[6]]

Customs, thus advised that ceramic wall plates for electric switches chiefly used for ornamental purposes are described in subpart C, part 2 of schedule 5, classified the imported ceramic switch plates thereunder in TSUS item 534.94. The record fails to overcome the presumption that they were properly classified.

The protests are overruled. Judgment will be entered accordingly.

---

5. See also, United States v. Durst Mfg. Co., Inc., 46 CCPA 74, C.A.D. 700 (1959); K. Togasaki & Co. v. United States, 23 CCPA 342, T.D. 48197 (1936); Adele v. United States, 23 CCPA 305, T.D. 48176 (1936).

6. The Tariff Classification Study is an explanatory and background report of the United States Tariff Commission to the President and the Congress on the Tariff Schedules of the United States.